UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re | ) | |
| HYON KIL PARK | ) | Bankruptcy Case No.: 04-35409-SBB |
| SSN: xxx-xx-5956 | ) | Chapter 7 |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | Adv. Pro. No.: 05-1273-SBB |
| CITYWIDE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HYON KIL PARK | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT**
_____

THIS MATTER came on for a one and half day trial on Thursday, January 5, 2006. Plaintiff Citywide Banks (the "Bank") was represented by David R. Lucey and Douglas D. Koktavy. Defendant Hyon Kil Park ("Park") was represented by Barry K. Arrington. The Court has received all of the testimony, documents and other evidence and enters the following findings of fact, conclusions of law and judgment.

**FINDINGS OF FACT**

**A.     Stipulation.**

The parties stipulated to the following facts in the Pretrial Statement:

1. The Bank is a Colorado banking corporation, with its principal place of business located at 10660 E. Colfax Ave., Aurora, Colorado, 80010.

2. On January 15, 1998, the Bank made Park a loan in the original amount of $90,932.00, Loan No. 697344494. That was a commercial loan amortized over sixty (60) months. It was paid off on February 1, 2002. The purpose of the loan was to purchase a business.

3. On April 7, 1998, the Bank made Park a loan in the original amount of $32,320.00, Loan No. 697345358. The purpose of the loan was to purchase a business. This loan was amortized over sixty (60) months and was also paid off on February 1, 2002.

4. On February 1, 2002, the Bank made a loan in the original amount of $145,000.00, Loan No. 697524911. The purpose of that loan was business consolidation. It was to be amortized over eighty-four (84) months. It was paid off on May 8, 2002.

5. Park has been a businessman for over 15 years in the business of apparel dry cleaner/cleaning, owning a number of such businesses, including Park's Cleaners and Foothills Cleaners.

6. One of the dry cleaning businesses was called "White Collar Cleaners". This business was sold in 2002 and Park realized proceeds of sale in the amount of $151,630.13.

7. Early in 2003, Heritage Cleaners, Inc. and Park entered into a Business Opportunity Purchase Contract. The contract provided for the sale of two dry cleaning establishments from Heritage Cleaners to Park. One cleaners came to be known as City Cleaners, located at 7132 E. County Line, Highlands Ranch, Colorado. The second came to be known as Unique Cleaners and was located at 1550 E. Colorado Blvd., Denver, Colorado.

8. The contract provided for a total purchase price of $240,000.00. It contemplated that Park would acquire a loan for $95,000.00 for the County Line Road establishment and $80,000.00 for the Colorado Blvd. establishment and that Park would pay $65,000.

9.  To partially finance the acquisition of the City Cleaners and Unique Cleaners, Citywide made loans to Park of $95,000.00 for the County Line Road establishment and $80,000.00 for the Colorado Blvd. establishment, respectively.  Evidence of and terms of the loans are set forth below.

**LOAN No. 200018184**
(County Line Road Loan)

10.  To evidence the loan, on or about March 14, 2003, Park made and delivered to Citywide a Promissory Note in the principal amount of $95,970.00, plus interest at the rate of 8%, with 84 monthly payments of principal and interest beginning April 14, 2003.

11.  To secure repayment of the Note, Citywide and Park entered into a Commercial Security Agreement which granted the Bank a security interest in business property at the cleaners at 7132 County Line Road, Littleton, CO.

**LOAN No. 200018248**
(S. Colorado Boulevard Loan)

12.  To evidence the loan, on or about March 14, 2003, Park made and delivered to Citywide a Promissory Note in the principal amount of $80,820.00, plus interest at the rate of 8%, with 84 monthly payments of principal and interest beginning April 14, 2003.

13.  To secure repayment of the Note, Citywide and Park entered into a Commercial Security Agreement which granted the Bank a security interest in business property at the dry cleaning business at 1550 S. Colorado Blvd., Denver CO.

14.  On March 14, 2003, the loans funded and financed Park's purchase of Unique Cleaners and City Cleaners.

15.  On March 22, 2004, Park was served with a Demand For Possession Of Premises of the County Line Road premises.

16. On or about April 9, 2004, the landlord at the S. Colorado Blvd. premises recovered the premises, which had been abandoned by Park.

17. A UCC-1 financing statement was recorded on March 3, 2004 for Eastern Funding, with Park as the Debtor and "Westwood Cleaners" the second debtor.

18. Upon Park's default on the loans, and after liquidation of the Bank's collateral, on November 2, 2004, Citywide obtained a default judgment against Park as follows:

**(On Loan No. 200018184)**
As of August 16, 2004, for
- a. Principal balance $89,223.16
- b. Accrued interest $ 3,712.28
- c. Storage/Rent fees for City Cleaners Site Collateral $ 8,397.60
- d. Security Fee at Site $ 617.00
- e. Attorney Fees and Costs $ 3,730.34
- e. With credit for ½ of net proceeds For Disposition of Collateral $ (8,875.00)
- f. Total $ 96,805.38;

plus interest on the unpaid principal at 8 % *per annum*, or the *per diem* amount of $19.82 and reasonable attorney's fees and costs incurred until the judgment is satisfied in full.

**(On Loan No. 200018248)**
As of August 16, 2004, for:
- a. Principal balance $76,990.93
- b. Accrued interest $ 3,148.09
- c. Storage/Rent fees for Unique Cleaners Site Collateral $12,606.10
- d. Attorney's Fees And Costs $ 3,730.34
- e. Credit for ½ of net proceeds For Disposition of Collateral $ (8,875.00)
- f. Total $ 87,600.46;

plus interest on the unpaid balance at 8 % *per annum*, or the *per diem* amount of $17.11, and reasonable attorney's fees and costs incurred until the judgment is satisfied in full.

**B.     Additional Findings of Fact.**

The Court finds the following additional facts:

1. The Court reviewed and considered all of the documents admitted into evidence. The documents that were most instructive and upon which the Court bases its decision are exhibits 1, 2, 3, 4, 6, 10, 22, 35, 48 and 49 and B, C and D.

2. Park speaks and understands very little English.

3. Park was dependent upon and utilized Daniel Oh as his translator and broker and as a confidant.

4. Park and Daniel Oh had a history of various transactions with the Bank.

5. Based upon that history the Bank felt comfortable with Park and Park's ability to perform and Daniel Oh's role in the transaction.

6. The Bank's comfort level may have been an important part of the problem in this transaction.

7. Park did not know and did not understand the documents that he signed and that he did not know and did not understand the specifics of the representations and warranties made to the Bank and what was **not** being represented that might have been disclosed and which might have been material.

8. When Park took out the loan and it was consummated in March of 2003 he did not have in his mind the incipient, inactive, and dormant Westwoods Cleaners lease and future obligation that did not ripen until the beginning of 2004.

9. The Court does not find any scienter on the part of Park.

10. The Court does not find that Park intended to deceive the Bank.

5

11. The Court does not find that Park had any intend to conceal material facts and thereby mislead the Bank when the loan was made in March of 2003 or when an adjustment to the loan was made in October of 2003.

12. The Court finds that Park believed he had a ten-day "look see" option or opportunity when he purchased the two cleaners. In other words, he believed that if he was not satisfied with the businesses after ten days he could give them back to the seller and obtain a refund of the purchase price. Park's belief in this regard was based upon his reliance on Daniel Oh and Mr. Oh's characterization of the sale, the transaction and the "look see" option.

13. Park felt strongly, even passionately, that he had been deceived and disserved by Daniel Oh and that he was trapped in a transaction that had been misrepresented to both him and the Bank. The letters that Park sent and the other actions he took shortly after the loan transaction closed amply demonstrate this.

14. Exhibit 2 is Park's purported financial statement. This document is relevant to the dynamics, relationships, trust and reliance of the parties in this transaction, particularly as it affected the relationship between Park and the Bank. This document is emblematic of much in this case.

15. Exhibit 2 contains a number of different misstatements of material facts and significant inaccuracies. The Bank knew that Exhibit 2 was **not** an accurate and reliable document. When he found out about the document Park himself took great umbrage with it and denied it without qualification. The document contains entries that attempted to portray Park as a borrower of great substance and means, with assets both in this country and abroad and with a not insubstantial income. The Court concludes that Park did not write Exhibit 2. Instead,

Exhibit 2 was put together by Daniel Oh. Far from participating in the preparation of the document, Park was shocked when he found out about it.

16. In addition, the Bank did not rely upon Exhibit 2. The unrefuted evidence shows that Daniel Oh fashioned the document almost out of whole cloth with the purpose of closing the deal.

17. The only representation in Exhibit 2 upon which the Bank relied was the entry showing that Park had cash of approximately $110,000, and that entry was materially accurate.

18. The Court cannot find any moral turpitude or wrongful intent with respect to the conduct and activities of Park.

## CONCLUSIONS OF LAW

1. The Bank brought this action pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 11 U.S.C. §§ 523(a)(2)(B) objecting to the discharge of its loans to Park. Sections 523(a)(2)(A) and (B) of the Bankruptcy Code state in pertinent part:

> (a) a discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – . . .
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> > >
> > > (B) use of a statement in writing –
> > >
> > > > (i) this is materially false;
> > > > (ii) respecting the debtor's or an insider's financial condition;
> > > > (iii) on which the creditor to whom the debtor is liable for such money property, services, or credit reasonably relied; and
> > > > (iv) that the debtor caused to be made or published with intent to deceive.

2. The Bank brought three claims. Claim II and Claim III were dismissed at the end of the Bank's case-in-chief on Park's motion for directed verdict. The Bank's Claim I, which involves Section 523(a)(2)(A), was not dismissed at the end of the Bank's case-in-chief.

3. The essence of the Bank's Claim I is that Park failed to disclosure material information and did so knowingly and purposefully to deceive the Bank in granting a loan for the purchase of two dry cleaning businesses.

4. The burden of proof is on the plaintiff by a preponderance of the evidence only. The burden of proof is not by a clear and convincing margin.

5. The elements that must be demonstrated to the Court by a preponderance of the evidence are that (1) the debtor made a false representation of a material fact, (2) at the time of the representation, the debtor knew the representation was false or a concealment was knowingly made, (3) the representation was made with the specific intent to deceive the creditor, and (4) the creditor justifiably relied on the misrepresentation to its detriment. *First Bank of Colo. Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 680 (10th Cir.1987), *abrogated on other grounds*, *Field v. Mans*, 516 U.S. 59 (1995). All of these elements must be proved or the plaintiff does not prevail.

6. In *Field v. Mans*, 516 U.S. 59 (1995), the court held that debts extended based on a debtor's oral fraudulent statements may be barred from being discharged under § 523(a)(2)(A) if a creditor "justifiably" relied on those statements.

7. In *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367 (Tenth Cir. 1996), the court held that in certain circumstances a failure to disclose material facts may constitute fraud under Section 523(a)(2)(A).

8. The Court found the credibility of all three witnesses that testified at trial to be solid, good and not subject to being discounted.

8

9. The Bank did not carry its burden of proofing elements (2), (3) and (4) set forth above. The Bank did not prove that Park knowingly concealed information from the Bank with the specific intent to deceive the Bank. Moreover, the Bank did not prove that it justifiably relied upon Park's representations or that the representations were incomplete.

10. The key to this central conclusion and finding are two factors.

11. The first key factor is that Bank did not do adequate or sufficiently businesslike due diligence or investigation of the transaction, the defendant and the parties presented to it, and instead relied upon a history of prior loans and what proved to be faulty unsupported assumptions.

12. The second key factor is that the business broker Daniel Oh was central and essential to this transaction. Mr. Oh initiated, drove, steered and controlled the communication of the transaction and concluded the transaction, and – not incidentally – earned a handsome commission on the transaction. The Court concludes that Mr. Oh engaged in trickery and deception and very much misled both the Bank and Park.

13. The Court concludes that Park's rationale, argument and explanation is a good deal more persuasive, accurate and corroborated account of events than the Bank's account of events.

14. The Court is cognizant of and sensitive to the language factor involved in this case and that often language is used as an excuse or a cover for engaging in bad conduct. The Court is persuaded that this did not happen in this case and that Park's testimony was credible.

15. Based upon the foregoing the Court concludes that the Bank has failed to carry its burden of proof on essential elements of its claim and that judgment should enter for Park.

**JUDGMENT**

IT IS HEREBY ORDERED, that the complaint in this matter is dismissed in its entirety.

IT IS FURTHER ORDERED, that judgment shall and hereby does enter in favor of Defendant Hyon Kil Park and against Plaintiff Citywide Banks.

Dated this 19th day of January, 2006

BY THE COURT

*Sid Brooks*
_____
Sidney B. Brooks, Chief Judge
United States Bankruptcy Court for the
District of Colorado